Alright, the next case is the City of Virginia v. The Village of Chandlerville for the appellant, Mr. Thomas, for the appellee, Mr. Tice. Mr. Tice. Good morning to the Police Board and Council. This appeal involves a dismissal of a three-count complaint filed by the City of Virginia v. The Village of Chandlerville. The trial court dismissed all three counts of the complaint with prejudice. This appeal followed. The first count involved an alleged breach of an implied-in-fact contract. The trial court reasoned that it should have been dismissed pursuant to 2-6-15 and 2-6-19, one for failure to state a cause of action and two that the statute of limitations had run at the time of filing the complaint. The trial court reasoned that the Tort Immunity Act applied to the claim and therefore there was a one-year shortened statute of limitations. The other reason was that the trial court found that the plaintiff did not and could not allege any facts to support a breach of an implied-in-fact contract. We believe that both of those decisions were in error. We do not believe that the Tort Immunity Act applies to any of the claims under plaintiff's complaint. Specifically, in this court and other courts in our state have held that an implied-in-fact contract is legally an actual contract. If that is true, there is a specific statutory exception to the Tort Immunity Act which states that the Tort Immunity Act is applicable to actions under contract. Therefore, we believe that we are under the length and statute of limitations of either a 5-year or a 10-year statute, either of which would have not barred the plaintiff's complaint based on the statute of limitations. Also, as to the 615 motion, we don't believe the court viewed the facts, the well-pled facts, pled by plaintiff in the light most favorable. In so doing, the court incorrectly found that there was not an actual pleading of an implied-in-fact contract. Specifically, plaintiff alleged that the authorized representatives from each of the entities had a series of meetings and based on those meetings agreed that plaintiff would build and finance a regional water system. That defendant would provide plaintiff with information necessary to include and design the water treatment facility to include the village of Channonville. That the defendant, in fact, did provide that information to plaintiff. That defendant agreed to pay for its pro-rata share of the capital expense advanced by the City of Virginia for including the village. And that the plaintiff, in fact, provided the village with not one, but two preliminary engineering reports as called for under the written instruments to give the village the option to opt out based on the expected rates. Both engineering reports were to be either accepted or, I guess, if there was an objection and wanted a termination of being in the project, they would have been required to alert the City that the rates were not acceptable and that they opted out of the agreement. Do you agree that the City could not have statutorily contracted to provide water for an excess of 40 years? I believe that is correct, yes. That is why the agreements, in fact, state a start date for the contract to be upon the... So the question is, at least one of the questions before us is, did this contract exceed the 40-year limitation? I don't believe it did because the commencement of it would have been upon the... If we conclude otherwise, do you lose? No, I think that the Court should still adopt the contract to the extent of the 40 years in any time period. If, in fact, the City or Cass Rollwater sought to enforce it after the 40-year period, then I believe that would be a valid defense of further performance under the contract. I'm not sure I understand your answer. So you're saying we should cut it to 40 years? We should at least make it a 40-year contract? Yes. Because that anticipates an outlay of considerable expense in advance of the 40-year period. To do so, I guess you would have the expenditure of all the money to build the plant, to design the plant, and then actually have a period of time up to 40 years where you could deliver the water. And let's say that at year 35, if the Court elects to say the commencement started upon the execution of these documents or the commencement of the work on the project, you still have an extended period of time that all the parties had agreed to pay for their expense, and also benefited from the water treatment plant. So I think that that would not be a good precedent to set and would possibly lead to many municipal contracts being examined and validated. Well, it shouldn't be a tricky thing to do if the statute says it can't exceed 40 years. And your concern is about validating the contract, make sure it doesn't exceed 40 years. And we believe that that's well covered under these. Well, I mean, dates of contract normally are when the parties sign. Isn't that how it works? You know, if you and I are going to have a contract for you providing me services, we sign it up. That's the date of the contract, isn't it? Your services might not start for three months or six months, but the date of the contract in common parlance would be when we sign. I agree that that is typically the case. I believe parties can also contract for another initial start date. But the date of the contract, when you perform the services are one part, but the date we reached an agreement and we signed the contract is the date we sign, isn't it? Yes. I mean, that is the date you sign. You're arguing that that doesn't apply here. Why not? Because, in essence, they agreed to the start date. They contracted to agree to the effective start date of their contract, which I believe is permissible. And what was that date? That was going to be the date that water was first delivered. It would be the start date for the purposes of meeting the statutory requirements. The trial court did not agree with the defendants about the 40-year contract provision? That is correct. Okay. Go ahead. We also have that plaintiff alleged that it also incurred expense directly as a result of the representations of Chandlerville, that it was going to participate in the project, design the project, and that was to its detriment. We believe that, in fact, meets all of the elements of the implied, in fact, contract claim. The elements were there. The well-fed facts were there. So it's your position that until the water treatment facility was completed, the contract doesn't begin? For the purposes of the payments, yes. Well, how long? So it was going to be some months or years before the facility was going to be completed? Yes, in fact, that was the case. They anticipated five years, right? Yes, they did anticipate five years. So how about after three years, while the facility was being built, what if the city of Chandlerville said, By the way, you know that the contract we signed, it's not in effect yet because the treatment facility isn't done, and we're abrogating it. Could they have done that? I believe so, yes. So what they signed three years earlier amounts to nothing? I believe they could do that conditioned upon receipt of the preliminary engineering report. Why condition? If there's no contract, why do they need to do anything? Why can't they just say, you know, that contract you thought we had three years ago, we decided we didn't like it, so we don't want you to be relying upon it any further. And since it didn't start, it doesn't start until the treatment facility was completed, forget about it. I don't believe the contract itself starts when the treatment plan is completed. You mean it was a binding contract even before the facility was done? It was a binding contract before the facility was done and after the preliminary engineering report. But not before then? Correct. Chandlerville would have had the option pursuant to these agreements that it could have opted out. As far as a contract in the terms of the written agreements, I don't think that still has an effect on the implied and fact contract argument because we're not stating that the written agreements in total is the contract between. Couldn't this entire matter have been avoided by saying we're going to provide water for 34 years and include the five years it takes to build a facility? There's several things including that that could have been done to avoid a lot of the confusion. And then we wouldn't have to be involved in this business about whether a contract is effective or not? Correct. I'm not here to say that these are the most well-written contracts. I understand, counsel. You can only do the best you can with what people signed up. But nonetheless, we do believe that there is an implied and fact contract. The trial court also dismissed the promissory estoppel claim based on the same two reasons. One, that the Tort Immunity Act applied under statute of limitations had lapsed and that there were facts alleged to support it. You're not challenging in any way that the city or the village of Chandlerville raised this 40-year contractual statute provision at the trial court, are you? No, I'm not. The judge just didn't buy it at the trial court even though that was one of the grounds that they asserted upon which your claim should be dismissed. Yes, that was properly raised at the trial court. Okay, go ahead. As far as the promissory estoppel claim, we don't believe the Tort Immunity Act applies to that. I believe the trial court and defense counsel argued and used the terms of promissory estoppel and equitable estoppel interchangeably. And in fact, the cases relied upon involved equitable estoppel, which by the elements of it have a fraud or a ill-motive element to them, whereas the promissory estoppel claim doesn't require the pleading of a fraud element. It's simply an unambiguous promise made by the defendant, reliance on that promise by plaintiff that the defendant could foresee, and plaintiff's reliance on that promise was reasonable, and the plaintiff relied on that to its detriment. Here we have fled that Jandlerville made an unambiguous promise to participate in the project, that plaintiff relied upon those representations, in fact designed at her expense to include them, that certainly it was foreseeable that the plaintiff was going to rely on their representations to participate, and the plaintiff has alleged that it was for monetary damages for the design and redesign of the project. We believe that it was improper at that stage to dismiss it, present it to 615, because the court should have looked at those well-fled facts in the light most favorable to the plaintiff. It got to the sense that it felt as if the trial court was requiring proof of plaintiff's claim at the pleading level, whereas that is not required, and we don't believe that the plaintiff's complaint was given the liberal construction that it should have, and there was being more demands placed on plaintiff than necessary at the pleading stage. We don't believe that the city had to prove each and every fact that it alleged, and that seemed to be where everything ended up going towards. The trial court also found that the City of Virginia could not assert a promissory estoppel claim, because it was not a party to the contract between Cass, Rural Water, and Chandlerville. Had it been a party to the contract, it wouldn't have been a promissory estoppel claim. That reasoning just doesn't make sense, in that a promissory estoppel claim stands alone from a breach of contract. We cited, the Supreme Court stated, that the Restatement Second, Section 90 of the contracts, does allow for plaintiffs to assert a promissory estoppel claim, and that third parties could do so. We believe that supports the reasoning that a promissory estoppel claim could have been made by this plaintiff, even though it may have not been a direct party to the Cass, Rural Water and the Villages contract. There was some reasoning going back to the history of the Supreme Court citing its own precedent. The trial judge believed that it couldn't have adopted Restatement Second, because it wasn't in existence in the case the Supreme Court stated. I think just by its affirmative statement that it had adopted it previously, and applied it in a case post the adoption, or post the creation of the Restatement Second, that the Supreme Court has held that that is applicable. We believe that was error on the trial court's part, that there is no fraud element to the promissory estoppel claim, and that it does in fact apply to third parties. Lastly, and I believe the defendant has also conceded that the trial court's determination that the Cass, Rural contract and Village contract was no contract at all, but an intergovernmental agreement, and that therefore it was not assignable unless all parties had signed off on the assignment. It's clear by the plain language of the written agreement between Cass, Rural and the Village that it is assignable. There's a specific provision providing that it is assignable. Does the provision state something along the lines of, if it is assigned it doesn't really address, it doesn't come out and say this agreement can be assigned, does it? I don't believe it specifically says that this agreement can be assigned. It provides that the person stepping into the shoes of the purchaser or seller receives all rights and benefits of the previous person either by assignment or legal process. So I think it does say that, but it doesn't state specifically the language Your Honor had stated. But nonetheless, we believe that that assignment was valid. Now, the defendant attacked the actual assignment based on a violation of the Open Meetings Act and the lack of consideration cited. We don't believe that the assignment is deficient in any way as far as the consideration. And also, any Open Meetings Act violation on the part of Cass, Rural, Water would have been waived. The time period for raising that had expired at the time that the Village had raised that issue. The question whether they would have had standing to do so under the Open Meetings Act. Thank you. Thank you. Mr. Tice. Appease the Court. I have with me a young associate that we brought on board, Kevin Tomchak. Welcome. This case started with a complaint by the City of Virginia against the Village of Chatterville. The first complaint they filed was one count. That was Promissory Estoffel. The defendant doesn't deny that Promissory Estoffel can be a valid theory, if that's what they wish to do. That was struck by the Court for failure to plead sufficient facts to show that they could be successful with Promissory Estoffel to establish some kind of contract. They amended that, added the contract, added the theory of implied and fact contract, switched the count numbers. That was before that got to a hearing on a motion to dismiss. They added the third count, which was based upon the assignment of this contract, the 2004 Water Purchase Contract between Cass, Rural, Water District, which is a governmental body authorized under 70 ILCS 3700 portion of the statute, with the Village of Chatterville for this purchase of water for this, what I deem to be a period of time in excess of 30 years. The trial court, we think, was proper in dismissing this complaint with prejudice, both as to the implied and fact contract and the Promissory Estoffel contract, because the court concluded, after three basic attempts by the plaintiff here, that they could not plead any facts to show that the Village Board of Trustees of Chatterville had intended to or granted any authorization by any form of resolution or ordinance to enter into a contract with Virginia, the City of Virginia. And the plaintiff here is not Cass, Rural, Water District, it is the City of Virginia. So the City of Virginia had to find some way to get around this, and that's where they invoked the Promissory Estoffel theory, the implied contract theory. When they weren't successful at that, they went to Cass, Rural, Water District and said, sign this to us. When you look at the Cass, Rural, Water District Chatterville contract, you get into these issues of whether it violated the term, the term of limitation on both Cass, Rural, Water District and the Village of Chatterville. You find the 40-year provision for Chatterville in the Municipal Code, and you find the 40-year term provision for Cass, Rural, Water District, which is likewise a governmental body in its Act that authorizes it, 70 ILCS 3870511, I think it is, Section 11. And that provision, that 40-year provision is very simple. It just says they can enter into water contracts with municipalities to sell them water, but it's limited to a 40-year term. This contract obviously goes beyond the 40-year term. There's no question about it in our mind. I think there's no question about it in the trial court's mind, because it was entered into in 2004. By 2009, according to the plaintiff's own pleadings, they had not yet started delivering water, portable water, to the Village of Chatterville. In fact, their pleadings indicate, they specifically state in their pleadings, that they redesigned the system, the project, to exclude Chatterville from the project. They couldn't even enforce it, they couldn't deliver on water, even if this were a valid contract, and even if the assignment were valid from Cass, Rural, Water District to Virginia in the first place. So, that's where you get, I think, to the reasoning of the trial court here, where they said, all you're asking for is money damages, Virginia. You're not asking to be able to perform or sell water to Chatterville here, you just want money back for costs you had in redesigning the system or some other money that you feel that you have lost. And that's where the Tort Immunity Act came in. The courts, I think, have indicated that where the only objective of the lawsuit, even though it's cast in applied in fact or promissory estoppel, is to collect money that it sounds in tort, and therefore the Tort Immunity Act comes into play in the one-year limitation. If they knew in 2009, we think they knew before that, as noted by an affidavit that we filed in the trial court, when notice was given that we weren't going to proceed, Chatterville wasn't going to proceed with this project on behalf of, under the 2004 contract. That was done in March of 2008. But even assuming that Virginia is correct in saying they didn't know that Chatterville wasn't going to proceed until 2009, they didn't file this complaint until December of 2010. It was March, I think, of 2009. They said they realized this wasn't going to happen. Chatterville wasn't going to be on board. They didn't file a complaint until 2010. There's no question, and the trial court concluded, you can't prove that you filed this complaint within the one-year limitation if, in fact, it's merely a claim for money damages that the Tort Immunity Act applies. So I think the trial court was correct in delving through the facts set forth in this second amendment complaint of the plaintiffs and properly held that the Tort Immunity Act applied. We, of course, claimed in the trial court the statute of frauds applied also because there wasn't a written contract between Chatterville or Virginia. The court didn't rule on that. So it's really not an issue here, I suppose, at this point. Did you raise the issue of the statutory limitation of 40 years? Yes. And you argued that the contract was void? Yes, in the court. The court concluded in its... I can't hear you. The court concluded, and I added to or attested as an appendix of our brief for the oral dissertation by the trial court, they concluded that the municipal authorization for Chatterville to enter into water purchase contracts was not limited to 40 years. Only the payment part was limited to 40 years. So the court rejected that argument? Rejected that argument and filed a cross-appeal on it. And you raised it, Mr. Thomas concedes, that this was something raised and presented to the trial court in this record? I believe that's my understanding of what I've heard today. And the trial court granted your motion to dismiss, but not on that ground? Not on that ground. And you purport to be appealing. How does that work? Because I didn't know what was going to happen here. Well, but you see, here's the thing, counsel. We review judgments, not reasons. And the judgment before us is you won. That's correct. And you claim to be appealing. If we agree with you, what judgment are we supposed to change from the trial court? You can leave the trial court judgments alone. But you claim to be a cross-appellant. On the 40 years. Only in view of the fact that it could go back. If it went back, I had to have something. The reason I asked you as I did, and I prefaced it as I did, and I asked Mr. Thomas if you raised it, is you need not, and I don't think can be, a cross-appellant when the only judgment before us is one you want us to embrace, but for different reasons, arguably. In other words, if you're the appellee, which you are, you could argue all the reasons you presented below, including anything on the record, and we could affirm the judgment based upon an argument you presented that the trial court rejected, such as the 40-year limitation on contracts. The 40-year limitation on the Village of Channerville's water purchase contract was also raised as a part of the motion to dismiss the implied effect contract claim as well as the promissory stuff, because there is a reliance element on the part of Virginia as to those claims. I think you're missing my point, counsel. I'm sorry. You're not the cross-appellant. No, I understand that. As an appellee, you could present to us any argument made to the trial court that was before the trial court, if rejected by the trial court, which would be a basis upon which to affirm the judgment that you won at the trial court level. And we did argue, in all deference, the 40-year statute of limitations as it applies to the issue of reasonable reliance by Virginia on that 2004 contract as a basis for asserting it.  But you are not a proper cross-appellant before this court is what I'm trying to point out. I'll accept that. Okay, go ahead. We also believe that the trial court got into this issue of an intergovernmental agreement while we are, because we are the appellee in this case, required to accept the trial court's interpretation that the 2004 contract between Virginia and Channerville was, in fact, an intergovernmental agreement and, therefore, could not be assigned. That was the basis of the trial court. Because Channerville itself did not consent to that assignment, we agree that that would be a proper argument or proper basis for this court to dismiss count three, which was the assignment which was based on the 2004 contract between Channerville and Castlewater, and Virginia's attempt to rely on that as a basis of making a claim against Channerville. We think that the Intergovernmental Agreement Cooperation Act requires a voluntary arrangement between governmental bodies, not one necessarily enforced or imposed by the court as such. And in this case, Channerville clearly never entered into any voluntary arrangement or contract with Virginia. Their contracts were always with Castlewater District. So we believe the court was proper in making that decision in dismissing count three. The other thing that we agree the trial court was correct in deciding was that the plaintiff never alleged any sufficient facts to support their claims, at least under the implied effect contract or the promissory estoppel contract, because they never alleged that Channerville itself approved those arrangements, never authorized any of the members of the Channerville official board or the mayor, village president as he is called in that community, to sit down and make any binding contract with Virginia. Unless those actions are taken by the village board itself, those people have no authority to make those arrangements, make those agreements. The plaintiff alleged that, for instance, there were letters that passed back and forth between Channerville and Virginia. There were meetings in which people got together and talked about whatever they planned for this overall project, plans for making applications for funding, those kinds of things. Indications that they would sit down and make negotiations as to rates and other things in the future at some point in time. Those are simply actions made by individual representatives of the village of Channerville that do not lead to the making of a binding contract, because nothing went back to Channerville for approval by its village board that would be in arrangement directly with Virginia in this case. We think the trial court was proper in making that decision. We think the trial court gave the plaintiff ample opportunity to make its pleadings or attempt to plead those facts, which would allow that to happen. The other thing I would point out is that Virginia never, although they alluded to and alleged there were letters and other written documents that would substantiate the basis in writing of their implied fact contract or their plan for promissory estoppel, never, ever attached those to their pleadings, even though we asked to dismiss their pleadings on that basis under 735 ILCS 5-2-606, which requires those documents, if they're basing their claim on those documents, to be attached to the complaint. They did not do that. Why I don't know, but they did. I think the trial court lost patience and so we had the dismissal for various reasons. We would ask the court, I have nothing else on this, I would ask the court to affirm the trial court's decision. Thank you. Rebuttal. Just a couple of items, one of which they're claiming that the city of Virginia never, I guess, performed or made it impossible to deliver water under any of the contracts or under the implied contract. In fact, I believe their letter of record stating that they weren't going to participate, in fact, made that impossible. It would be an anticipatory breach of the agreement. So I think the city and Cass Rural were completely within right and had a duty to mitigate their damages and not build the water treatment plant to include the village. The defendant's argument would require that, would require an increase of capacity at the ultimate plant build, would have required the laying of all the water lines to the village, all at a time when the village specifically states they're not going to participate. I think that the plaintiff or Cass Rural, neither of which would be able to collect those costs because once they're put on notice of the intent not to participate in the anticipatory breach, mitigation of those damages would have required them to cease all work to include the village. We believe that the complaint itself alleges there was redesigned, that there was expenses incurred to redesign, and those were reasonable efforts to mitigate their damages. They didn't start from scratch. They just redesigned the part of the plant and the overall system to exclude Chandlerville. So I think that that argument is without merit because, in fact, the village is what caused the inability to deliver the water, their decision not to participate. Back to the issue of whether or not the contract extends beyond the 40-year term. I believe the Court has correctly noted that that was not the basis for the trial court, but the defendant did raise that, and that issue was raised at the trial court level. Again, we feel that if there is a 40-year term to be applied between the village and the City of Virginia, the Court could also adopt 40 years from the 2004 signing. That in and of itself would make it a lawful contract. So we have a start date of the contract. If, in fact, this contract is determined to legally start upon signing, then 40 years from that term would be the 40-year term as a matter of the law. And since that is a statutory obligation, those terms of the statute would be inferred in any contract in which a municipal body is involved. So I think that would not bar a plaintiff either in its own capacity or as assignee of the Cass World Water contract, because the law does provide that any of those statutory provisions under the municipal code are implied in all contracts between municipalities. Thank you. Thank you. We take this matter under advisement. We will stand in recess until 12.